IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE ROBERT B. KUGLER

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | |
| Plaintiff, | Civil No. 04-1512 (RBK) |
| v. | |
| EQUITY FINANCIAL GROUP, LLC, et al., | |
| Defendants. | |

## REPORT AND RECOMMENDATION

This matter comes before the Court for a Report and Recommendation concerning an issue relating to the claims of Sterling ACS, Ltd., Sterling Alliance Ltd., Sterling Casualty & Insurance, Ltd., Sterling Bank Limited, Sterling (Anguilla) Trust, Ltd., Sterling Investment Management, Ltd., and Strategic Investment Portfolio, LLC (collectively the "Sterling entities") in the above action.[1]  Specifically, Plaintiff, Commodity Futures Trading Commission (hereinafter "CFTC"), objected to any distribution to the Sterling entities until such entities responded to the CFTC's requests for discovery.  See Objection of the Commodity Futures Trading Commission to the Claims of the Sterling Entities [150] (hereinafter "CFTC Objection [150]"), at 2.  The

---

1.  The underlying basis of this dispute is set forth in the Report and Recommendation dated September 2, 2005 and shall not be restated herein.

Court previously recommended approval of the interim distribution as proposed by the Receiver with modifications as set forth in the Report and Recommendation dated September 2, 2005.[2]  This Report and Recommendation serves to address certain objections raised by the CFTC to Sterling's claims.  Specifically, the CFTC seeks from Sterling the backup tape of two of the three computers of Defendant J. Vernon Abernethy that Abernethy stated he made in response to the Receiver's request to preserve the computer files relevant to this case.[3]  Id. at 3-4; see also Declaration under Penalty of Perjury of J. Vernon Abernethy Pursuant to 28 U.S.C. § 1746 (hereinafter "Abernethy Decl.") at ¶ 4, attached as Exhibit F to CFTC's Reply to the Sterling Entities' Response to CFTC's Objections [169].  The Court conducted an evidentiary hearing with respect to the tape issue on May 13, 2005.  For the reasons set forth herein, Sterling shall produce the backup tape to the CFTC, and failure to do so will result in Sterling's claims remaining on the disputed claims schedule.[4]

---

2.  For reasons unrelated to the tape issue addressed herein, the Court overruled Sterling's objections to the interim distribution and Sterling at this time remains on the disputed claims list. The Court has scheduled a September 28, 2005 hearing to address Sterling's aggregation issues and issues relating to the account in Man Financial.

3.  Initially, the CFTC also objected to any distribution to Sterling until Vernice Woltz appeared for deposition.  At a status conference on August 15, 2005, the CFTC withdrew the objection as it relates to this deposition, advising the Court that the deposition occurred on August 9, 2005.

4.  In the Report and Recommendation dated September 2, 2005, the Court noted CFTC's objection to any distribution to Sterling for Sterling's failure to produce foreign bank records.  See CFTC's

## I.   BACKGROUND

This dispute centers around the production of a computer backup tape relating to two desktop computers and a laptop computer located in Abernethy's home office.  Abernethy, a named defendant, testified during the evidentiary hearing that all three computers were used in his capacity as an agent for Tech Traders, a named defendant.  He also testified that he used the computers as President of Sterling Casualty & Insurance, Ltd., as a member of Strategic Investment Portfolio, and as an agent of the Sterling Companies.  See Transcript of Hearing on May 13, 2005 (hereinafter "Transcript"), at 14-15, 33; see also Abernethy Decl. at ¶¶ 5-6. He further testified that within twenty-four hours after meeting with the Receiver and counsel for the CFTC on April 7, 2004, he had an external backup tape media device created to image the two desktop computers.  See Transcript at 15-16; see also Abernethy Decl. at ¶ 7.  He testified that the tape contains electronic files pertaining not only to Tech Traders and the other parties in this matter, but also electronic files pertaining to Abernethy's work in his capacity as President of Sterling Casualty & Insurance, Ltd.

---

Reply to the Sterling Entities' Response to CFTC's Objections [169] at 11.  The Court previously concluded in the Report and Recommendation that failure to produce these bank records served as a basis for Sterling to be placed on the Disputed Claims Schedule.  In addition, the Court further required that all entity claimants, including Sterling, must provide a list of natural persons holding beneficial interests in the investor entity and disclose the information required by the Receiver or be prepared to have their claims placed on the Disputed Claims Schedule.  See Report and Recommendation dated September 2, 2005, at 58.  To the extent the CFTC contends that additional foreign bank records must be produced, this issue shall be addressed at the conference on September 19, 2005.

and as a member of Strategic Investment Portfolio, as well as electronic files pertaining to his general tax practice, including confidential personal and financial information of his customers, and personal electronic files. See Transcript at 15, 17, 45; see also Abernethy Decl. at ¶ 15. Abernethy further testified that on or about April 13, 2004 he was visited in his home office by Walter Hannen, Coyt E. Murray (a named defendant in this matter), Howell Woltz, and Vernice Woltz, and that he observed Walter Hannen during the visit installing programs and downloading and creating files from the two desktop computers. See Transcript at 17, 20; see also Abernethy Decl. at ¶ 9. Abernethy further testified that he gave Walter Hannen the backup tape of the desktop computers in response to Hannen's request for a copy of the computer files. See Transcript at 21; see also Abernethy Decl. at ¶ 9. Abernethy also testified that Walter Hannen came to his office on another day during the week of April 12, 2004 and worked on both of the desktop computers. See Transcript at 23; see also Abernethy Decl. at ¶ 11. Abernethy stated that on April 22, 2004 he requested that Walter Hannen return the backup tape but was told that Vernice Woltz, the chief financial officer for the Sterling entities, had taken the tape to the Bahamas. See Transcript at 24; see also Abernethy Decl. at ¶ 12. Abernethy testified that between April 2004 and August 2004 he repeatedly requested that Walter Hannen return the backup tape, but the tape has not yet been returned. See Transcript at 24, 26; see also Abernethy Decl. at ¶ 13.

The CFTC contends that Abernethy's computers contained

4

relevant evidence and that Walter Hannen may have altered or destroyed that evidence. See CFTC's Reply to the Sterling Entities' Response to CFTC's Objections [169] (hereafter "CFTC Reply [169]") at 14. As the backup tape was created before Hannen's visit to Abernethy's home, the CFTC asserts that the tape "may contain the only remaining copy of that evidence." Id. The CFTC argues that the tape is necessary so that the CFTC can compare the files on the tape to those files on the computers from which the tape was made. See CFTC Objection [150] at 3-4. The CFTC further argues that the removal of the tape is in direct violation of the Consent Order of Preliminary Injunction Against J. Vernon Abernethy, which provides in relevant part that Abernethy and "each firm, corporation, partnership, association or other person or entity which holds or is a depository of his funds, securities, assets or other property of any kind, are prohibited from directly or indirectly transferring, withdrawing, removing or disposing of any such funds, securities, assets or other property." Id. at 3 (quoting Consent Order of Preliminary Injunction Against J. Vernon Abernethy dated August 23, 2004, at ¶ 4). The CFTC asserts that it has attempted to obtain the backup tape since August 2004 and was promised the tape during the deposition of Howell Woltz on December 10, 2004. Id. The CFTC further states that on March 21, 2005, Sterling informed the CFTC that it will only produce "hard copies of documents 'which relate to the deposit or withdrawal of funds to or from Tech Traders.'" Id. The CFTC argues that the backup tape is not the property of the Sterling entities and that Sterling

should be required to turn over the tape.  CFTC Reply [169] at 15-16.

In response to the CFTC's objections, the Sterling Entities contend that they only learned of the CFTC's interest in the backup tape in or about September 2004.  See Memorandum of Law and Fact in Response to the Objections Filed by the CFTC [165] (hereinafter "Sterling Br.") at 3.  Sterling states that Abernethy's computer was the property of Sterling Casualty & Insurance and that Sterling agreed to have the computer analyzed, tested, and returned to Sterling.  Id. at 4.  Sterling thus argues that the CFTC has a copy of every file existing on the computer as well as a report of which files have been deleted over time.  Id.  Further, with regard to the tape, Sterling argues that the tape was a copy of the Sterling computer that the CFTC already analyzed, and Sterling asserts that it informed the CFTC that it would forward "documents in any way relevant to" this action to the CFTC.  Id.  In addition, Sterling asserts that the CFTC agreed to produce a copy of the "deleted files" report created during the CFTC's analysis of the computer and that Sterling agreed to produce any of the deleted files which existed on the backup tape.  Id. at 5.  Sterling contends that the CFTC never produced such report.  Id.  Moreover, Sterling disputes that it has violated the Consent Order of August 23, 2004.  Sterling first argues that the backup tape is the property of Sterling and is a copy of the hard drive of a computer that belongs to Sterling, and thus the Consent Order allegedly does not apply.  Id. at 12-13.  Moreover, Sterling contends that the tape was sent

6

to the Sterling offices in the Bahamas in April 2004, before the entry of the Consent Order.  Id. at 13. Sterling argues that because the entities are not parties to this action, they are not subject to requests for production and have never been served with a subpoena.  Id.  Finally, Sterling objects to production of the remaining files on the tape because they are allegedly proprietary, confidential, and not relevant to this matter.  Id. at 14.

The CFTC filed a reply to Sterling's response disputing the representation by Sterling that the backup tape was a copy of a computer owned by Sterling.  Specifically, the CFTC states that the laptop computer that is claimed to be Sterling property was not backed up, but rather Abernethy directed the imaging of his two desktop computers.  CFTC Reply [169] at 13-14.  The CFTC thus argues that the tape is not the property of Sterling and that the tape contains Abernethy's personal files.  Id. at 14-15.  Further, as the CFTC only analyzed the laptop computer, the CFTC contends that it does not have copies or reports of what information was on the two desktop computers prior to the visit by the Sterling principals.  Id. at 15.  To the extent the backup tape contains some documents that the CFTC already has, the CFTC argues that it is still entitled to those documents.  Id.  Finally, the CFTC argues that in addition to Sterling's violation of the Consent Order entered in August 2004, Sterling's taking and retention of the backup tape is also a violation of the Statutory Restraining Order, which "prohibits Defendants' agents and 'all persons insofar as they are acting in active concert or participation with

7

[defendants]' from directly or indirectly '[d]estroying, altering, concealing or disposing of any books, records, electronically stored data or other documents, wherever stored concerning the Defendants. . . .'" CFTC Reply [169] at 15.  The CFTC thus asserts that Sterling should be required to turn over the tape.  Id. at 16.

## II.  FINDINGS OF FACT

The Court held an evidentiary hearing in this matter on May 13, 2005 in which Abernethy gave sworn testimony with regard to the backup tape.  After reviewing all of the evidence submitted by the parties and considering the evidence received at the evidentiary hearing, for purposes of deciding the CFTC's objection to Sterling's claim for distribution, and for purposes of resolution of this discovery issue, the Court makes the following findings of fact.

1.   J. Vernon Abernethy ("Abernethy") resides at 413 South Chester Street, Gastonia, North Carolina and has a home office at the same address.  Transcript of Hearing on May 13, 2005, at 13-14.

2.   Abernethy used three computers, one Hewlett Packard laptop computer, one Acer 56 Max desktop computer, and one Acer 36X desktop computer, in his home.  Transcript of Hearing on May 13, 2005, at 14.

3.   Shortly after meeting with Elizabeth Streit, Esquire, counsel for the CFTC, and Stephen Bobo, Esquire, the Equity Receiver, Abernethy arranged for Ken Houser at Southeastern Systems to make a Colorado backup tape of the two desktop computers,

identified as "JVA" and "JVERNON".  Transcript of Hearing on May 13, 2005, at 15-16, 46.

4.   Abernethy paid for the tape, and his own tape drive was used to make the tape.  Transcript of Hearing on May 13, 2005, at 15-16, 46.

5.   Abernethy also placed files of the laptop computer on a CD. Transcript of Hearing on May 13, 2005, at 17, 39-40.

6.   After the backup tape of the two desktop computers was created, Abernethy was visited on or about April 12, 2004 by Walter Hannen, Harold Woltz, Vernice Woltz, and Coyt Murray. Transcript of Hearing on May 13, 2005, at 17.

7.   Abernethy gave the backup tape to Walter Hannen on the day Walter Hannen, Howell Woltz, Vernice Woltz, and Coyt Murray visited Abernethy in his home.  Transcript of Hearing on May 13, 2005, at 21.

8.   Abernethy requested in April 2004 that Walter Hannen return the backup tape but the tape was never returned.  Transcript of Hearing on May 13, 2005, at 23-24, 26.

9.   Abernethy acquired one of his desktop computers, identified as "JVA," prior to the year 2000.  Transcript of Hearing on May 13, 2005, at 33-34.

10.  Abernethy paid for the "JVA" desktop computer.  Transcript of Hearing on May 13, 2005, at 34-35.

11.  Abernethy acquired the "JVERNON" desktop computer in 2002. Transcript of Hearing on May 13, 2005, at 34.

12.  Abernethy paid for the "JVERNON" desktop computer.  Transcript

of Hearing on May 13, 2005, at 35.

13.   Abernethy performed work for Tech Traders on the "JVA" computer. Transcript of Hearing on May 13, 2005, at 34-35.

14.   Abernethy performed work for Tech Traders on the "JVERNON" computer.  Transcript of Hearing on May 13, 2005, at 34, 36.

15.   Abernethy used the "JVERNON" computer to prepare 2002 tax returns.  Transcript of Hearing on May 13, 2005, at 35.

16.   Abernethy performed work for Sterling Insurance and Casualty on all three of the computers.  Transcript of Hearing on May 13, 2005, at 36-37.

17.   Abernethy used the "JVERNON" computer to access his electronic mail.  Transcript of Hearing on May 13, 2005, at 37.

18.   After the April 7, 2004 visit, in or about August 2004 Abernethy provided the laptop computer to the Receiver. Transcript of Hearing on May 13, 2005, at 41-42.

19.   In or about September or October 2004, Abernethy provided the two desktop computers to the Federal Bureau of Investigation. Transcript of Hearing on May 13, 2005, at 67.

**III. DISCUSSION**

Sterling has objected to production of the backup tape on four grounds.  First, Sterling argues that the tape is a backup of a Sterling computer and is itself Sterling property.  Sterling also contends that the CFTC already has the documents on the tape and therefore the tape need not be produced.  In addition, Sterling states that the tape was sent to the Bahamas in April 2004 and thus was not the subject of the August 23, 2004 Consent Order.  Finally,

Sterling asserts that the files on the tape contain proprietary information that will not be produced.   In light of the above findings of fact and for the reasons that follow, the Court concludes that the Colorado backup tape is the property of Abernethy.   Accordingly, Sterling's remaining arguments are unavailing, as Sterling has failed to demonstrate that it has the right to retain such property.

The Court notes Sterling's contention that the backup tape is a backup of a Sterling computer and that the tape itself is Sterling property.   <u>See</u> Sterling Br. at 4, 12-13.   Through cross-examination of Abernethy, Sterling raised the issue of ownership of the laptop computer, and Abernethy testified that Sterling funds were in fact used to pay for the laptop, although he claimed that the payments from Sterling's funds were used as an offset against travel expenses incurred by him.[5]   Transcript of Hearing on May 13, 2005, at 37-38.   The Court need not address the ownership issue with respect to the laptop at this time because the testimony was uncontroverted that the hard drive of the laptop was not copied onto the Colorado backup tape at issue here. The uncontroverted evidence offered at the evidentiary hearing demonstrates that Abernethy backed up on the Colorado tape only the two desktop

_____

5.  Abernethy testified that he used Sterling funds from a Sterling checking account to pay for the laptop computer, and by agreement with Howell Woltz the payments were an offset against Abernethy's travel expenses.  Transcript of Hearing on May 13, 2005, at 37-38.  Sterling produced no evidence or argument as to the ownership of the desktop computers and apparently does not dispute Abernethy's testimony that he paid for the JVA and JVERNON computers with his own funds.

11

computers, "JVA" and "JVERNON."  In addition, Abernethy testified that he paid for these two computers with his own funds, and there is no other evidence to the contrary.  Although Sterling argues in its brief that it "confirmed that the back-up was not of Mr. Abernethy's computer; rather, it was of the Sterling Casualty & Insurance computer that the CFTC already had analyzed," see Sterling Br. at 4, Sterling has presented no evidence to demonstrate that either of the two desktop computers were Sterling property, nor has Sterling demonstrated that the tape at issue is a backup of another computer that is Sterling property.  In light of Abernethy's unrefuted testimony that the desktop computers were his property and having no evidence to support a finding otherwise, the Court concludes that the backup tape is a copy of the hard drives of the two desktop computers that were the property of Abernethy.  The fact that Abernethy used the computers for other accounting work, including work for Sterling, does not alter the Court's finding that the tape belongs to Abernethy and must be produced to the CFTC.

Moreover, the Court further concludes that the tape itself is the property of Abernethy.  Although Abernethy could not recall during the evidentiary hearing whether he was billed by Ken Houser at Southeastern Systems for making the tape, the testimony is uncontroverted that Abernethy arranged to have the tape made, that he paid for the tape, and that his own tape drive was used to make the tape.  See Transcript of Hearing on May 13, 2005, at 15-16, 46. Sterling has presented no evidence that supports its claim that the

12

tape is Sterling property.   As Abernethy has testified that he
arranged for the tape to be made, that he paid for the tape, and
that the tape is a copy of the hard drives of computers owned by
Abernethy, the Court finds, for the purpose of determining this
issue, that the tape is also the property of Abernethy and
therefore shall be immediately turned over to the CFTC.

Having so found, the Court rejects Sterling's argument that it
need not produce the tape because the CFTC already obtained copies
of the files contained therein through forensic analysis and/or may
request that Sterling produce any deleted files that exist on the
tape.  The Court notes that the CFTC disputes that it has copies of
such files, as only the laptop computer -- and not the two desktop
computers -- was purportedly the subject of forensic analysis.
Even assuming that the CFTC has copies of the files contained on
the tape, the fact remains that the tape is the property of
Abernethy and he has demanded its return from Sterling.  Sterling
cites no authority to support its assertion that it is entitled to
retain such property. In this regard, the Court finds Sterling's
argument unavailing.   The Court likewise rejects Sterling's
argument that it need not produce the tape because it has not been
served with a formal discovery request.  Sterling has availed
itself of this Court by filing claims to the receivership estate
and by objecting to the Receiver's proposed distribution, and the
Court finds that Sterling shall be compelled to turn over the tape.
Failure to do so will preclude Sterling from having its claims for

distribution considered.[6]

The Court further notes the CFTC's assertion that Sterling's taking and retention of the backup tape is a violation of the Statutory Restraining Order of April 1, 2004 and the Consent Order of August 23, 2004. Having already determined that the tape is not Sterling property and must be produced to the CFTC, in the context of addressing the CFTC's objections to Sterling's claims for distribution, the Court need not make a finding with regard to whether Sterling is in violation of the Court's prior orders. To the extent any party believes that an entity or individual is in violation of a court order, such party may file a motion for contempt in accordance with the Federal Rules of Civil Procedure.

Finally, the Court rejects Sterling's argument that the files on the tape contain proprietary information that is not relevant to this case and that Sterling is entitled to retain the tape on that basis. The Court has found that the tape is the property of Abernethy and is therefore subject to the Statutory Restraining Order of April 1, 2004 and the Consent Order of Preliminary Injunction dated August 23, 2004. The case relied upon by Sterling, Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351-52 (1978), stands only for the general proposition that discovery from a party may be denied where it is not relevant to the issues in the case.

---

6.  At oral argument on May 13, 2005, counsel for the Sterling entities stated that he anticipated that Sterling will abide by the terms of the Court's Order.  See Transcript of Hearing on May 13, 2005, at 82.  However, in the event Sterling fails to provide the backup tape to the CFTC, the CFTC may file an appropriate motion for additional relief.

In light of Abernethy's testimony that he worked on matters involving Tech Traders on the computers, and given the testimony that the Sterling principals used Abernethy's computers after the tape was made, the Court cannot conclude that the tape contains no information relevant to this litigation.  Consequently, the Court finds that the tape must be turned over to the CFTC.

I am filing this Report and Recommendation with the Clerk of the Court and sending a copy of same to all counsel of record.  Any objections to this Report and Recommendation must be filed within ten (10) days of service pursuant to L. Civ. R. 72.1(c)(2) and Fed. R. Civ. P. 72(b).


Dated: September 9, 2005          s/ Ann Marie Donio
                                  ANN MARIE DONIO
                                  UNITED STATES MAGISTRATE JUDGE


cc: Hon. Robert B. Kugler

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE
HONORABLE ROBERT B. KUGLER

COMMODITY FUTURES TRADING
COMMISSION,

      Plaintiff,            Civil No. 04-1512 (RBK)

   v.

EQUITY FINANCIAL GROUP, LLC,
et al.,

      Defendants.

## ORDER

This matter having come before the Court concerning an issue relating to the claims of Sterling ACS, Ltd., Sterling Alliance Ltd., Sterling Casualty & Insurance, Ltd., Sterling Bank Limited, Sterling (Anguilla) Trust, Ltd., Sterling Investment Management, Ltd., and Strategic Investment Portfolio, LLC (collectively the "Sterling entities") and the objection by Plaintiff, Commodity Futures Trading Commission, to any distribution of the receivership estate to the Sterling entities until these entities responded to the CFTC's requests for discovery; and the CFTC specifically seeking from Sterling the Colorado backup tape of two of the three computers of Defendant J. Vernon Abernethy that Abernethy made; and the Court having considered the arguments submitted by the CFTC and Sterling's responses thereto, and the Report and Recommendation submitted by the Honorable Ann Marie Donio, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C); and the Court having made a de novo review; and for good cause shown:

IT IS on this ____ day of September, 2005

**ORDERED** that the Report and Recommendation is **ADOPTED**; and it is further

**ORDERED** that the Sterling entities shall turn over the Colorado backup tape to the CFTC no later than September ____, 2005.

_____
ROBERT B. KUGLER,
UNITED STATES DISTRICT JUDGE