<u>NOT FOR PUBLICATION</u>          (Docket Nos. 159, 160, 167, 189, 230, 231)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : : : | |
| Plaintiff, | : : | Civil No. 04-1512 (RBK) |
| v. | : : | **OPINION** |
| EQUITY FINANCIAL GROUP, LLC, et al., | : : : | |
| Defendants. | : : | |

**KUGLER**, United States District Judge:

Before the Court are motions by Defendants Robert W. Shimer, Vincent J. Firth, and Equity Financial Group, LLC, to dismiss the Counts against them in Plaintiff Commodity Futures Trading Commission's First Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6). Also before the Court is Defendants' motion for summary judgment. For the reasons provided below, Defendants' motions will be denied in their entirety.

**I.   Background**

The motions presently before the Court relate to the role of Robert W. Shimer ("Shimer"), Vincent J. Firth ("Firth"), and

Equity Financial Group, LLC ("Equity"), (collectively "Equity Defendants"), in a multi-million dollar commodity fraud operated by Defendants Tech Traders and its president Coyt Murray. Between June 2001 and April 2004, Tech Traders allegedly solicited over $47 million in investments by claiming to employ a portfolio trading system that guaranteed significant annual returns. While Tech Traders and its supposedly independent certified public accountant (CPA), Defendant J. Vernon Abernethy, reported substantial monthly and quarterly gains, Tech Traders was actually hemorrhaging money at a remarkable rate, resulting in losses in excess of $20 million. Tech Traders lost at least $7 million in trading commodity futures contracts, and unlawfully appropriated investors' funds to pay salaries, expenses, and make disbursements under the guise of profit.

The Equity Defendants' liability arises from their control and operation of a related investment group, Shasta Capital Associates, LLC ("Shasta"), which was essentially a feeder fund for Tech Traders. The Commodity Futures Trading Commission ("CFTC" or "Plaintiff") alleges that the Equity Defendants solicited approximately $15 million from 74 investors between June 2001 and March 2004, for the purpose of investing in Tech Traders. Shasta's Private Placement Memorandum informed investors that 99% of this money would be invested for the benefit of Shasta and 1% would be used for management costs. Upon receipt,

investor funds were deposited into Shimer's attorney escrow account and then transmitted to Tech Traders. Tech Traders pooled the Shasta funds with its other investment funds and used them, in part, to trade exchange-traded commodity futures contracts and foreign currency contracts.

Over the course of their relationship with Tech Traders, the Equity Defendants reported tremendous trading profits, even though Shasta was actually losing substantial sums through Tech Traders and apparently failed to generate any profit whatsoever. The Equity Defendants further misled investors by representing that these profit numbers were verified by an independent CPA, Defendant Abernethy, whose results were then affirmed by a second CPA. The CFTC alleges that the Equity Defendants knew or should have known that neither CPA's review was independent and that the results were therefore unverified.

Shimer, representing himself pro se, filed a motion to dismiss for failure to state a claim, a motion to dismiss for lack of jurisdiction, and a motion for summary judgment on April 14, 2005. Firth joined Shimer's motions on April 15, 2005, and Equity joined on April 28, 2005.[1] The motion for summary judgment

---

[1] On May 13, 2005, Shimer sent, but did not electronically file, a letter to the Court requesting the Court to extend his motion to dismiss to encompass Count V of Plaintiff's First Amended Complaint. Because Shimer failed to follow the proper procedure for amending motions under Local Rule 7.1, and because this Court now finds that Shimer's motion to dismiss has no merit, this Court will not consider Shimer's letter.

was dismissed without prejudice, pursuant to a status conference with Magistrate Judge Ann Marie Donio. Shimer and Firth later re-filed motions for summary judgment on July 8, 2005.

## II. Discussion

### A. Standard

Although the Equity Defendants have filed three separate motions, each motion uses essentially the same arguments to dispute the same point: whether Shasta is a "commodity pool" for the purposes of CFTC jurisdiction.[2] Because the parties' dispute is essentially one of law, founded on solely legal arguments, the standard this Court applies in resolving the dispute is of little import. Marshall County Health Care Authority v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir. 1993) (holding that where the question the court must address is solely a question of law, there is "no real distinction in this context between the question presented on a 12(b)(6) motion and a motion for summary judgment.").[3]

---

[2] Defendants spend over 170 pages of briefing belaboring this point in what can only be characterized as an abuse of the judicial process. Shimer's initial brief is approximately 92 pages, well in excess of the 40 pages authorized by Local Rule 7.2(b). Pursuant to a letter filed February 11, 2005, Shimer requested that the Court make an exception to this rule and permit his brief to stand. This Court will permit Shimer's overlong motion to stand, however, further failures to comply with the Local Rules will not be permitted.

[3] Dismissal under Rule 12(b)(1) is appropriate only if the court lacks subject matter jurisdiction over the suit. A district court has jurisdiction where a well-pleaded complaint establishes that plaintiff's right to relief depends on resolution of a substantial question of federal law. See e.g., Franchise Tax Bd.

Accordingly, this Court will assess the merits of Defendants' argument through the lens of the summary judgment standard.

Summary judgment is only appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. If the moving party has not fully discharged its initial burden, its motion for summary judgment must be denied. Id. at 332.

**B.   Commodity Pool**

Congress amended the Commodity Exchange Act and

---

of State of Cal. v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 10 (U.S. 1983). If the plaintiff pleads a federal cause of action, the court should dismiss for lack of subject matter jurisdiction only where the claims are "so attenuated and unsubstantial as to be absolutely devoid of merit." Murrow v. Clifford, 502 F.2d 1066, 1068 (3d Cir. 1974). Because plaintiff CFTC's claims are neither frivolous nor devoid of merit, this Court has jurisdiction over the present suit. Accordingly, Defendants' motion to dismiss for lack of jurisdiction under 12(b)(1) will be denied.

established the CFTC in 1974 in an attempt to insure "fair practice and honest dealing on the commodity exchanges and provid[e] a measure of control over those forms of speculative activity which often demoralize the markets to the injury of producers, consumers, and the exchanges themselves." S. Rep. No. 1131, 93d Cong. 2d Sess., reprinted in [1974] U.S. Code Cong. & Ad. News, 5843, 5844; Lopez v. Dean Witter Reynolds, Inc., 805 F.2d 880, 883 (9th Cir. 1986). Defendants now argue that their company, Shasta, does not fall under the definition of a commodity pool and is therefore exempt from the jurisdiction of the CFTC.[4]

For the purposes of the Commodity Exchange Act, "[p]ool means any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests." 17 CFR § 4.10 (d)(1). As amended by Congress in 1992, a "commodity pool operator" is defined as:

> any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market.

Pub L. No. 102-546, 106 Stat 3590 (1992).

---

[4] Plaintiff asserts that Defendants need not be a commodity pool for the purposes of Count I and Count V of the First Amended Complaint. Because this Court finds that Shasta is a commodity pool, it does not reach the merits of the CFTC's argument.

A commodity pool is distinguished from other investment entities by the aggregation of investors' funds into a single account. Funds from the account are then invested without regard to the source of specific funds, and the profits and losses are distributed pro rata among the investors. In <u>Lopez v. Dean Witter Reynolds, Inc.</u>, 805 F.2d 880, 884 (9th Cir. 1986), the Ninth Circuit articulated four requirements to ascertain the presence of a commodity pool: "(1) an investment organization in which the funds of various investors are solicited and combined into a single account for the purpose of investing in commodity futures contracts; (2) common funds used to execute transactions on behalf of the entire account; (3) participants share pro rata in accrued profits or losses from the commodity futures trading; and (4) the transactions are traded by a commodity pool operator in the name of the pool rather than in the name of any individual investor." <u>Id.</u>; <u>see also</u> <u>Nilsen v. Prudential-Bache Securities</u>, 761 F. Supp. 279, 292 (S.D.N.Y. 1991) (citing <u>Lopez</u>, 805 F.2d at 884) ("Essentially, a commodity pool operator is one who manages an investment fund, similar to a mutual fund, in which the assets of several investors are invested together with gains or losses shared pro rata by the participants."); <u>Meredith v. ContiCommodity Services, Inc.</u>, Comm. Fut. L. Rep. (CCH) ¶ 21,107, p. 24,462 ("In a commodity pool, all investors' funds are placed in a single account. Transactions are then executed on behalf of

7

the entire account and not allocated to any particular investor. The investors' profits and losses are then allocated by shares to individual investors based on their contribution to the fund.").

Courts have been adamant that where funds are not actually commingled, a commodity pool does not exist. Thus, the Lopez Court held that the enterprise at issue was not a commodity pool because "not all accounts traded the same contracts," and "[t]herefore, not all accounts shared a pro rata profit or loss." Id. at 884. Similarly, in Meredith v. ContiCommodity Services, Inc., Comm. Fut. L. Rep. (CCH) ¶ 21,107, p. 24,462 (D.D.C.1980), a case relied upon in Lopez, the Court found that the fact that the funds were not pooled into a single account precluded the enterprise from being a commodity pool, since "the profitability of plaintiff's investment was actually dependent only upon [defendant's] success or failure in trading for plaintiff's account even if it was coincidental with the profitability of the accounts of other investors." Id. Although the defendant did not give each account individual consideration and often invested various investors' funds in similar enterprises, the funds were not actually pooled.

Unlike the defendant entities in Lopez and Meredith, Shasta actually pooled investor accounts. Shasta satisfies the four factors of the Lopez test: (1) the funds of individual investors were pooled in Defendant Shimer's equity account; (2) these

8

commingled funds were then transferred en masse to Tech Traders to be invested in commodity futures, without distinguishing between the funds of individual investors; (3) investors believed that gains from the Tech Traders operation would be allocated pro rata, depending on the relative amount of their investment; and (4) trades were made on behalf of the pool rather than in the name of individual investors. Shasta is precisely the form of entity Congress authorized the CFTC to regulate as a commodity pool.

The fact that Shasta did not invest in commodity futures directly, but instead transferred funds to Tech Traders to invest does not affect Shasta's status as a commodity pool. In fact, the Shasta transactions mirror those in Commodities Futures Trading Commission v. Heritage Capital Advisory Services, Ltd., Comm. Fut. L. Rep. (CCH) ¶ 21,627, p. 26,384 (N.D. Ill.1982), another case formulating the basis for the Lopez decision. Heritage involved an operation very similar to Shasta: defendants solicited funds from individual customers, combined those funds into a common investment account[5] where the funds were commingled, and then gave those funds to a third party for investment in the futures market. In Heritage, the Court held that because investors expected to share profits and losses on a

---

[5] Defendants in Heritage actually deposited funds into two different accounts, both of which contained the commingled funds of a variety of customers.

9

pro rata basis, the enterprise was a commodity pool, regardless of the fact that it was a third party who conducted the actual investment activities. Id.

Defendants go to great lengths to argue that because the Shasta funds were not traded "in the name of Shasta," Shasta does not satisfy the fourth factor of the Lopez test and cannot be a commodity pool. Defendants' reading of the Lopez Court's language is far too literal. The Court intended the fourth factor to distinguish cases, such as Meredith, where investments are made in many of the same enterprises in the name of individual investors without pooling funds together in a single account. The appellation given the actual transaction is irrelevant, so long as it is a pooled fund and not conducted in the names of individual customer accounts. See In re Slusser, 1998 WL 537342 at n.36 (holding that entities at issue were commodity pools even though "[t]he pools were not traded in the name of the pool . . . [t]he key to the fourth factor is that the funds were not traded in the name of any individual investor, as was the case with the pools at issue here."). This pooling is clearly present here.

Besides arguing that Tech Traders did not invest Shasta's funds "in the name of Shasta," Defendants raise no evidence to suggest that Shasta is not a commodity pool. Accordingly, Defendants motions will be denied.

The accompanying Order shall issue today.


Dated:    10-4-05            S/ Robert B. Kugler
                            ROBERT B. KUGLER
                            United States District Judge