<u>NOT FOR PUBLICATION</u>                                    (Docket No. 336)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____  :
                                 :
COMMODITY FUTURES TRADING        :
COMMISSION,                      :
                                 :
            Plaintiff,           :    Civil No. 04-1512 (RBK)
                                 :
        v.                       :    **OPINION**
                                 :
EQUITY FINANCIAL                 :
GROUP, LLC, et al.,              :
                                 :
            Defendants.          :
_____  :


**KUGLER,** United States District Judge:

        Before the Court is a motion by Plaintiff Commodity Futures
Trading Commission for partial summary judgment against
Defendants Equity Financial Group, Robert W. Shimer and Vincent
J. Firth with respect to charges that they violated 7 U.S.C. §§
6k(2), 6m, and 6o(1) of the Commodities Exchange Act, pursuant to
Federal Rule of Civil Procedure 56. In addition, Plaintiff moves
for summary judgment with respect to the charge that Defendant
Shimer aided and abetted Equity's § 6m violation and Tech
Traders' violation of 17 C.F.R. § 4.30.  For the reasons provided
below, Plaintiff's motion will be granted in part and denied in
part.

## I.   Background

The motions presently before the Court relate to the role of Robert W. Shimer ("Shimer"), Vincent J. Firth ("Firth") and Equity Financial Group, LLC ("Equity"), (collectively "Equity Defendants"), in a multi-million dollar commodity fraud operated by Defendants Tech Traders and its president Coyt Murray ("Murray"). Between June 2001 and April 2004, Tech Traders allegedly solicited over $47 million in investments by claiming to employ a portfolio trading system that guaranteed significant annual returns. While Tech Traders and its supposedly independent certified public accountant ("CPA"), Defendant J. Vernon Abernethy ("Abernethy"), reported substantial monthly and quarterly gains, Tech Traders was actually hemorrhaging money at a remarkable rate, resulting in losses in excess of $20 million. Tech Traders lost at least $7 million in trading commodity futures contracts, and unlawfully appropriated investors' funds to pay salaries, expenses, and make disbursements under the guise of profit.

The Equity Defendants' liability arises from their control and operation of a related investment group, Shasta Capital Associates, LLC ("Shasta"), which was essentially a feeder fund for Tech Traders. The Commodity Futures Trading Commission ("CFTC" or "Plaintiff") alleges that the Equity Defendants solicited approximately $15 million from 74 investors between

June 2001 and March 2004, for the purpose of investing in Tech Traders. Shasta's Private Placement Memorandum ("PPM") informed investors that 99% of this money would be invested for the benefit of Shasta and 1% would be used for management costs. Upon receipt, investor funds were deposited into Shimer's attorney escrow account and then transmitted to Tech Traders. Tech Traders pooled the Shasta funds with its other investment funds and used them, in part, to trade exchange-traded commodity futures contracts and foreign currency contracts.

Over the course of their relationship with Tech Traders, the Equity Defendants reported tremendous trading profits, even though Shasta actually lost substantial sums through Tech Traders and apparently failed to generate any profit whatsoever. The Equity Defendants further misled investors by representing that these profit numbers were verified by an independent CPA, Defendant Abernethy, whose results were then affirmed by a second CPA, Elaine Teague ("Teague"), a close friend of Shimer's with little experience in this particular field. The CFTC alleges that the Equity Defendants knew or should have known that neither CPA's review was independent and that the results were therefore unverified.

Plaintiff filed this motion for summary judgment on April 7, 2006.

**II.  Discussion**

3

**A.    Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must

4

"make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003).

**B.    7 U.S.C. § 6m(1)**

Plaintiff CFTC alleges that because Equity failed to register with CFTC as a Commodity Pool Operator ("CPO"), Equity violated 7 U.S.C. § 6m(1) when it allegedly used instrumentalities of interstate commerce, such as the telephone and the mail, in connection with its business as a CPO. Equity Defendants do not directly address this count in their opposition papers.[1]  Rather, they continue to insist that Shasta is not a "commodity pool," the threshold issue for bringing this action under the jurisdiction of the CFTC.

The Commodity Exchange Act ("the Act") requires a CPO to

---

[1]    In fact, Defendants do not directly address any of the counts for which Plaintiff moves for summary judgment.  Rather, Defendants spend the majority of their brief pointing to the immateriality of Plaintiff's evidence, the "abusively overlong" nature of Plaintiff's list of material facts, as well as Plaintiff's alleged distortion of the facts.  However, Defendants dispute few of the facts crucial to the counts at issue in Plaintiff's motion.

Defendants claim that they do not have sufficient space to adequately oppose Plaintiff's summary judgment motion; however, the Court finds that Defendants had more than enough pages to raise genuine issues of material fact with regard to the counts and issues at hand had they not engaged in the digressions listed above.

register with the Commission. 7 U.S.C. § 6n. The Act prohibits unregistered CPOs from "mak[ing] use of the mails or any means or instrumentality of interstate commerce in connection with his business as [a CPO]."  7 U.S.C. § 6m(1).

This Court previously held that Shasta constituted a commodity pool.  See Commodity Futures Trading Comm'n v. Equity Fin. Group, No. 04-1512, 2006 WL 3359418 (D.N.J. Nov. 16, 2006); see also Commodity Futures Trading Comm'n v. Equity Fin. Group, No. 04-1512, 2005 WL 2864784 (D.N.J. Oct. 4, 2005).  Likewise, the Court concludes that Equity is the CPO for Shasta, because Equity solicited funds from investors, pooled those funds, and invested them in futures trading through Tech Traders. (Aff. Stephen Bobo at ¶ 5); see also 7 U.S.C. § 1a(4) (defining "[c]ommodity pool operator" as "any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in any commodity for future delivery . . . .").

Other than disputing that Shasta is a "commodity pool," a question of law already decided by this Court, the Equity Defendants do not raise a genuine issue of material fact to dispute Equity's status as a CPO.  In addition, it is undisputed that Equity is not registered with CFTC in any capacity. (Equity

Answer to Am. Compl. at ¶ 1.)

The question now before the Court is whether Equity used the mails and other instrumentalities of interstate commerce in connection with its business as a CPO.  In his September 24, 2004 deposition, Defendant Firth referenced telephone conversations he had with Mark Munson, a prospective investor in Shasta.  (Firth Dep. at 396-98.)  In addition, Nicholas Stevenson, a Shasta investor, testified at his February 28, 2006 deposition that he spoke on the phone with Defendant Firth about Shasta before he invested.  (Stevenson Dep. at 18-19.)

The evidence demonstrates that Equity, acting as an unregistered CPO, used instrumentalities of interstate commerce, i.e., the telephone, in connection with its business. Therefore, the Court concludes that Equity violated 7 U.S.C. § 6m(1), and the Court grants Plaintiff's motion for summary judgment with regard to this count.

### 1.   Aiding and Abetting

 Plaintiff also moves for summary judgment on the charge that Defendant Shimer aided and abetted Equity's failure to register as a CPO.

The Act provides that

Any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter, or who acts in combination or concert with any other person in any such violation, or

> who willfully causes an act to be done or omitted which
> if directly performed or omitted by him or another would
> be a violation of the provisions of this chapter or any
> of such rules, regulations, or orders may be held
> responsible for such violation as a principal.

7 U.S.C. § 13c(a).

Plaintiff asserts that Defendant Shimer "had the requisite knowledge that Equity was a CPO . . . because he was a lawyer . . . and [had] been registered as an [Associated Person] of a CPO before." (Pl.'s Mem. in Supp. Summ. J. at 33.) Although the evidence supports Plaintiff's assertions regarding Shimer's status as a lawyer and as a registered Associated Person of another CPO, the evidence does not conclusively establish that Defendant Shimer acted willfully. In his deposition testimony, Defendant Firth stated that Defendant Shimer researched whether Shasta, Equity, or any individuals needed to register with CFTC. (Firth Dep. at 112-13.) Firth further testified that Shimer concluded that registration was not required, and his findings were subsequently verified by a "firm." Id. Given this evidence, there is a genuine issue of material fact as to whether Defendant Shimer willfully violated the Act by failing to register Equity as a CPO. Therefore, Plaintiff's motion for summary judgment on the aiding abetting count associated with 7 U.S.C. § 6m(1) is denied.

**C.   7 U.S.C. § 6k(2)**

Plaintiff CFTC alleges that Defendants Firth and Shimer

8

violated 7 U.S.C. § 6k(2) of the Act by failing to register as Associated Persons ("APs") of the CPO. In their opposition papers, Defendants again argue only that Shasta is not a commodity pool.

The Act states that it is "unlawful for any person to be associated with a [CPO] as a partner, officer, employee, consultant, or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves [] the solicitation of funds, securities, or property for [] participation in a commodity pool . . . unless such person is registered with the Commission under this chapter as an [AP] of such [CPO]."  7 U.S.C. § 6k(2).

As stated in Section II.B., _supra_, in prior Opinions this Court established that Shasta is a commodity pool.  Moreover, this Court concluded in Section II.B., _supra_, that Equity is a CPO.

The question now before the Court is whether Defendants Shimer and Firth are APs under the Act, and if so, whether they registered with CFTC.  Courts define an AP as someone who "engage[s] in the solicitation of customers' orders."  _Miller v. Commodities Future Trading Comm'n_, 197 F.3d 1227, 1229 (9th Cir. 1999); _see_ _also_ _Commodities Future Trading Comm'n v. Sidoti_, 178 F.3d 1132, 1134 (11th Cir. 1999) (defining APs as "salespeople" for the brokerage house).

The record demonstrates that Shimer and Firth acted as APs for Equity. As discussed in Section II.B, _supra_, the deposition testimony of Defendant Firth, as well as Nicholas Stevenson, referenced telephone conversations during which Defendant Firth solicited prospective investors.  (Firth Dep. at 396-98; Stevenson Dep. at 18-19.) Stevenson further elaborated that his understanding was that Defendant Firth was the "marketing sales guy" for the CPO, and that Defendant Shimer was not only the "legal representative" for Shasta, but that he also played a "meaningful role getting investors" because he was an attorney, and his credentials made potential investors more comfortable because the investors assumed that Shimer, as member of the bar, performed the proper due diligence.  (Stevenson Dep. at 45-46.) In addition, the record demonstrates that Defendant Shimer personally referred potential investors to Shasta.  (Pl.'s Exs. 404, 405.)

Finally, the record demonstrates that neither Defendant Firth, nor Defendant Shimer, were registered as APs for Equity. (Pl.'s Ex. 371; Firth Answer to Am. Compl. at ¶ 30.)

Because the Court concludes that Shasta is a commodity pool and that Equity is a CPO, and because Plaintiff presented evidence that demonstrates that Defendants Firth and Shimer acted as salespeople for Equity, without registering with the CFTC as APs, and because Defendants Firth and Shimer raise no genuine

issue of material fact in their opposition papers, the Court concludes that Defendants Firth and Shimer violated 7 U.S.C. § 6k(2). The Court grants Plaintiff's motion for summary judgment on this count.

### D.   17 C.F.R. § 4.30

Plaintiff CFTC alleges that Tech Traders was a Commodities Trading Advisor ("CTA") for Shasta because it advised the Shasta commodity pool on trading in commodity futures contracts. Therefore, Plaintiff alleges that by accepting Shasta's funds and trading them in its accounts at Futures Commission Merchants under the Tech Traders name, Tech Traders violated 17 C.F.R. § 4.30.

The threshold issue is whether Tech Traders is a CTA. The Act defines a CTA as

[A]ny person who[:]

> (i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in-
>
> > (I) any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction execution facility;
> >
> > (II) any commodity option authorized under section 6c of this title; or
> >
> > (III) any leverage transaction authorized under section 23 of this title; or
>
> (ii) for compensation or profit, and as part of a

11

> regular business, issues or promulgates analyses or
> reports concerning any of the activities referred
> to in clause (i).

7 U.S.C. § 1a(6)(A).

In the moving papers, Plaintiff states that Tech Traders was a CTA and then cites to a paragraph in the statement of material facts that does not directly establish the statutory elements necessary to meet the definition of a CTA.  (Pl.'s Mem. in Supp. Summ. J. at 34; see also Pl.'s SMF at ¶ 9.)  Specifically, the material to which Plaintiff cites does not affirmatively demonstrate that Tech Traders received compensation or profit for advising Shasta on its commodities futures trading.[2]

Without establishing that Tech Traders was a CTA in the first instance, the Court cannot decide if Tech Traders violated 17 C.F.R. § 4.30 or if Defendant Shimer aided and abetted that violation.  Therefore, with respect to this count, the Court denies Plaintiff's motion for summary judgment.

**E.    7 U.S.C. § 6*o*(1)(B)**

Plaintiff alleges that the Equity Defendants violated 7 U.S.C. § 6*o*(1)(B) because they "directly or indirectly employed . . . a device, scheme, or artifice to defraud commodity pool participants, or . . . engaged . . . in transactions, practices or a course of business which operated as a fraud or deceit upon

---

[2]    The record in this case is extensive.  The Court will not sort through the record to locate citations to support the Plaintiff's motion.

commodity pool participants by means of the acts and practices
described above." (Am. Compl. at ¶ 74.)

Section 6*o*(1) of the Act states

It shall be unlawful for a commodity trading advisor,
associated person of a commodity trading advisor,
commodity pool operator, or associated person of a
commodity pool operator by use of the mails or any
means or instrumentality of interstate commerce,
directly or indirectly–

>            (A) to employ any device, scheme, or artifice
>            to defraud any client or participant or
>            prospective client or participant; or
>
>            (B) to engage in any transaction, practice,
>            or course of business which operates as a
>            fraud or deceit upon any client or
>            participant or prospective client or
>            participant.

The purpose of § 6*o*(1)(B) is to "implement[] the fiduciary
capacity that characterizes the advisor's relationship to his
clients." Commodity Futures Trading Comm'n v. Savage, 611 F.2d
270, 285 (9th Cir. 1980). Therefore, actual registration as a
CPO or an AP with CFTC is not required to fall within the ambit
of this provision. Id. at 282.

Courts hold that while the language of § 6*o*(1)(A) requires a
defendant to act "knowingly," § 6*o(*1)(B) does not. See, e.g.,
Commodity Trend Serv. v. Commodity Futures Trading Comm'n, 233
F.3d 981, 993 (7th 2000); Messer v. E.F. Hutton & Co., 847 F.2d
673, 678-79 (11th 1988); First Nat'l Monetary Corp. v.
Weinberger, 819 F.2d 1334, 1342 (6th 1987); see also Aaron v.
SEC, 446 U.S. 680, 697 (1980) (interpreting the language

13

"operates or would operate as a fraud or deceit" as "plainly focus[ing] on the effect of a particular conduct"). Rather, the language of § 6o(1)(B) prohibits individuals from "engag[ing] in any transaction, practice, or course of business which operates as a fraud or deceit upon any client," placing the emphasis on the effect of the prohibited conduct rather than the actor's state of mind.  Messer, 847 F.2d at 679.  Therefore, under § 6o(1)(B), a plaintiff need not show that the defendant intended to defraud, but only that the defendant acted intentionally. Savage, 611 F.2d at 285 ("If the [CPO] intended to do what was done and its consequence is to defraud the client or prospective client that is enough to constitute a violation of section [6]o(1))"; see also Commodity Futures Trading Comm'n v. Schafer, No. H-96-1213, 1997 WL 33547409, at *10 (S.D. Tex. 1997).

### 1.   Firth

This Court previously held that Defendant Firth acted as an AP for Shasta, a CPO.  See Section II.C., supra.  The next inquiry is whether Defendant Firth used the "mails or any means or instrumentality of interstate commerce" to "engage[] in any transaction, practice or course of business which operate[d] as a fraud or deceit on "any client or participant or prospective client or participant."

CFTC offers uncontroverted evidence that Defendant Firth, as President and sole shareholder of Equity, reviewed the PPM, which

represented to potential investors that Equity, as the Manager of
Shasta, conducted due diligence on Tech Trader's results and
trading system.  (Pl.'s Ex. 49 at 10.) Specifically, Firth signed
and distributed the PPM, which assured investors that Equity had
"adequate information" about Tech Traders' system and real time
trading.  The PPM went to potential investors, even though Firth
himself had no experience with commodity pool accounting, no
training in pool statement preparation, and no experience with
back office operations of a commodity pool.  (Firth Dep. at 15.)
Moreover, Firth never personally reviewed account statements to
verify the "good returns" that Defendant Shimer touted on his
personal investments with Tech Traders.  (Id. at 358.)  Instead,
Firth relied solely on Shimer's representations regarding the
soundness of the Tech Traders system.  (Id. at 358-61.)

In addition, the PPM assures independent verification by a
CPA, and provides procedures whereby review and verification will
take place, but Firth never personally understood how the process
worked.  (Pl.'s Ex. 49 at 17; Firth Dep. at 368-70.) Rather, he
again relied on Shimer's representation that the process was
sound. (Firth Dep. at 369.)  Further, Firth knew that Shimer
himself prepared monthly reports for Shasta that were supposed to
originate with Tech Traders.  (Firth Resp. to CFTC's Req. to
Admit at ¶ 5; Shimer Dep. at 886-91.)  The CPA was unaware that
these reports were coming from Shimer rather than Tech Traders,

15

and she stated in her deposition that had she known the true
source of the statements, she would not have verified the
results. (Teague Dep. at 363-65.)

Finally, Firth distributed the PPM via e-mail (Firth Dep. at
170), and he posted, or directed others to post, the "verified"
performance numbers from the CPA on the website (Id. at 392-93).
The Third Circuit established that the internet is an
instrumentality and channel of interstate commerce. U.S. v.
MacEwan, 445 F.3d 237, 245 (3d 2006).

Given the nature of the fiduciary relationship Firth had to
Shasta investors, the uncontroverted evidence that he intended to
make the above-referenced representations to potential Shasta
investors when he signed and distributed the PPM via e-mail and
posted the "verified" performance numbers on the Shasta website,
and that the PPM had the effect of defrauding or deceiving
potential investors, the Court concludes that Firth violated 7
U.S.C. §6o(1)(B), and the Court grants Plaintiff's motion for
summary judgment on this count.

    2.   Shimer

This Court previously held that Defendant Shimer acted as an
AP for Shasta, a CPO. See Section II.C., supra. As with
Defendant Firth, the next inquiry is whether Shimer used the
"mails or any means or instrumentality of interstate commerce" to
"engage[] in any transaction, practice or course of business

16

which operate[d] as a fraud or deceit on any client or
participant or prospective client or participant."

CFTC offers uncontroverted evidence that Shimer drafted the
PPM which touted the Tech Traders' system and performance and
established the system for independent verification. (Answer to
Am. Compl. at ¶ 42.)  However, the verification was flawed, since
Shimer himself produced reports for the CPA to verify, when the
procedures required that those reports come from the third party
trading company.  (Teague Dep. at 363-65.)

In addition, there were signs throughout the relationship
with Murray and Tech Traders that there was a problem.  Teague,
one of the CPAs, had ongoing concern that Tech Traders did not
provide monthly verification that it had a minimum amount of
money in its trading account to cover all investors' deposits to
the super fund.  (Teague Dep. at 573-74.)  This was necessary to
ensure that the trader could pay all the accounts in full should
the fund close abruptly.  (Pl.'s Ex. 470.)  In lieu of this
verification, Tech Traders would only provide monthly
verification that it had enough money on hand to cover Shasta's
deposit.  (Teague Dep. at 573-74.)  Teague found this
verification useless and of no consequence because Tech Traders'
ability to cover only Shasta's deposit was meaningless since
there were other investors to the super fund. (Id.)  In her
deposition, Teague claims she expressed this to Shimer.  (Id.)

17

Shimer indicated in an e-mail that he did not understand Tech
Traders' hesitation to provide the monthly verification, but he
accommodated Murray and Tech Traders' on this issue, despite the
CPA's protestations, and the concerns of some investors.  (Shimer
Dep. at 731-32.)

Moreover, Murray and Tech Traders repeatedly refused an
audit.  (Id. at 516.) Shimer attributed Murray's hesitation about
an audit to his eccentricities, and stated that Murray resisted
an audit out of concern that it would reveal his trading methods.
(Pl.'s Exs. 446, 447; Shimer Dep. at 1380.)  However, the CPA
clearly articulated to Shimer that an audit would not reveal any
proprietary information. (Shimer Dep. at 1388-89.)  Despite this
information, Shimer says that he never doubted Murray's reasons
for refusing an audit, and gave Murray "some accomodation [sic]
because the[] numbers were so good."  (Id. at 1381.)

Because Shimer, who had a fiduciary relationship to Shasta's
investors, intentionally ignored the numerous and varied warning
signs regarding Tech Traders and Murray, his lack of action had
the effect of perpetrating a fraud on Shasta's investors.  In
addition, Shimer used the internet to post his PPM, as well as
unverified performance numbers, on the Shasta website, and he
communicated with the CPAs, potential investors, and Murray via
e-mail.  Therefore, Shimer violated 7 U.S.C. § 6o(1)(B), and the
Court grants Plaintiff's motion for summary judgment on this

count.

**F.   7 U.S.C. § 13c(b)**

Plaintiff alleges that Defendants Firth and Shimer are liable for Equity's violations of the Act, pursuant to 7 U.S.C. § 13c(b), because Firth and Shimer "directly or indirectly controlled Equity and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Equity's violations" of the Act.  (Pl.'s Am. Compl. at ¶¶ 76, 80.)

Section 13c(b) of the Act states that

> Any person who, directly or indirectly, controls any person who has violated any provision of this chapter or any of the rules, regulations, or orders issued pursuant to this chapter may be held liable for such violation in any action brought by the Commission to the same extent as such controlled person. In such action, the Commission has the burden of proving that the controlling person did not act in good faith or knowingly induced, directly or indirectly, the act or acts constituting the violation.

7 U.S.C. § 13c(b).

Although Plaintiff offers evidence to suggest that Defendants Firth and Shimer acted knowingly or in bad faith when they violated 7 U.S.C. §§ 6o(1)(B) and 6m(1), Defendants offer contravening evidence regarding the reasonableness of their actions.  For example, with regard to the registration count, Defendant Firth asserts that he relied on Defendant Shimer's opinion, apparently verified by an outside firm, that none of the Equity Defendants needed to register with the CFTC. (Firth Dep.

19

at 112-13.) Likewise, Shimer asserts that he reasonably concluded that registration was unnecessary. (Shimer Dep. at 589-92; Pl.'s Ex. 410.)

With regard to the fraud count, Shimer and Firth allege that they were unaware of Shasta's CPA's concerns regarding verification of the rate of return. (Shimer's Resp. to Pl.'s Mot. Summ. J. Exs. E, F.)  Similarly, Shimer asserts that it was reasonable for him to rely on the allegedly independent CPA, Abernethy, given that Shimer thought Abernethy was qualified for the job after he reviewed Abernethy's credentials.  (Id. Exs. B, F.) Shimer also produced portions of a binder that details the Tech Traders system, which he alleges he reviewed prior to recommending the trading company. (Id. Ex. L.) Therefore, Shimer argues that the his representations regarding the system's performance were reasonable. (Id.) He further asserts that the same materials were provided to Firth. (Id. Ex. L.)

These assertions raise a genuine issue of material fact appropriately decided by a jury. Therefore, with regard to the controlling person liability under 7 U.S.C. § 13c(b), the Court denies Plaintiff's motion for summary judgment.

### G.   7 U.S.C. § 2(a)(1)(B)

Plaintiff also alleges that Equity is liable for the acts of Defendants Firth and Shimer under 7 U.S.C. § 2(a)(1)(B), which states

> The act, omission, or failure of any official, agent, or other person acting for any individual, association, partnership, corporation, or trust within the scope of his employment or office shall be deemed the act, omission, or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent, or other person.

7 U.S.C. § 2(a)(1)(B).

Courts interpret this provision of the Act to codify the common law principle of respondeat superior. Rosenthal & Co. v. Commodity Futures Trading Comm'n, 802 F.2d 963, 966 (7th 1986); Dohmen-Ramirez v. Commodity Futures Trading Comm'n, 837 F.2d 847, 858 (9th Cir. 1988). Under the common law doctrine, as well as principle liability under the Act, a principal is liable for the torts committed by its agents when the agents act in furtherance of the principal's business. Rosenthal, 802 F.2d at 966.

Firth clearly acted as an agent, given that he was the President, and an employee, of Equity. Likewise, Shimer acted as Equity's agent because he was Equity's legal counsel. The violations for which this Court grants summary judgment today, including failure to register under §§ 6m(1) and 6k(2), as well as the fraud count under 6o(1)(B), were all committed while Defendants Firth and Shimer acted as agents of Equity. Therefore, the Court grants Plaintiff's motion for summary judgment with regard to 7 U.S.C. § 2(a)(1)(B).

**III. CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment on the charge that Equity violated 7 U.S.C. § 6m(1); Defendants Firth and Shimer violated 7 U.S.C. § 6k(2); Defendants Firth and Shimer violated 7 U.S.C. § 6o(1)(B); and Equity is liable for the foregoing charges against Firth and Shimer under 7 U.S.C. § 2(a)(1)(B).

The Court denies Plaintiff's motion for summary judgment with regard to the charges that Defendants Firth and Shimer aided and abetted Equity's violation of 7 U.S.C. § 6m(1); Shimer aided and abetted Tech Traders violation of 17 C.F.R. § 4.30; and Firth and Shimer violated 7 U.S.C. § 13c(b).


Dated: <u>12/18/2006</u>          <u>s/Robert B. Kugler</u>
                                  ROBERT B. KUGLER
                                  United States District Judge