NOT FOR PUBLICATION                           (Docket Nos. 334, 335)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                               :
COMMODITY FUTURES TRADING      :
COMMISSION,                    :
                               :
          Plaintiff,           :   Civil No. 04-1512 (RBK)
                               :
     v.                        :   OPINION
                               :
EQUITY FINANCIAL               :
GROUP, LLC, et al.,            :
                               :
          Defendants.          :
_____:
```

**KUGLER**, United States District Judge:

Before the Court are motions on reconsideration by Defendants Robert W. Shimer and Vincent J. Firth for summary judgment with respect to all counts in Plaintiff Commodity Futures Trading Commission's First Amended Complaint, pursuant to Federal Rule of Civil Procedure 56(b).  For the reasons provided below, Defendants' motions will again be denied.

**I.   Background**

The Court set forth the background of this case repeatedly in prior Opinions, and need not do so here.  See Commodity Futures Trading Comm'n v. Equity Fin. Group, No. 04-1512, 2006 WL 3359418 (D.N.J. Nov. 16, 2006); see also Commodity Futures Trading Comm'n v. Equity Fin. Group, No. 04-1512, 2005 WL 2864784

(D.N.J. Oct. 4, 2005).  On April 7, 2006, Defendants filed motions for summary judgment on all counts alleged in Plaintiff Commodity Futures Trading Commission's ("Plaintiff" or "CFTC") Complaint.  On November 16, 2006, this Court issued an Opinion denying Defendants' motion. On December 5, 2006, Defendants moved for reconsideration, alleging, among other things, that the Court neglected to adequately address one argument with regard to why Defendants are entitled to summary judgment on Count One. The Court grants Defendants' motion for reconsideration to address that argument.

**II.   Standard of Review**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to

the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003).

### III. Class of Persons Protected by the CEA

Defendants argue that they never "engaged in any activity that can be described as the purchase or sale of a commodity futures contract . . . on behalf of . . . Shasta . . . Equity . . . or any member of Shasta." (Defs.' Br. in Supp. of Summ. J. at 37.)  Therefore, Defendants assert they the Shasta members are not within the class of persons protected by § 4b of the Commodities Exchange Act ("the Act"), 7 U.S.C. § 6b(a)(2), and that Defendants never engaged in activity proscribed by that

section of the Act. (Id.) To support their argument, Defendants rely on the United States Supreme Court decision, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353 (1982), to support their argument.

Section 4b of the Act "by its terms makes it unlawful for any person to deceive or defraud any other person in connection with any futures contract." Id. at 389; 7 U.S.C. § 6b(a)(2). In Merrill, the Supreme Court examined the legislative history of the antifraud provision of the Act to determine if futures investors had an implied private right of action. Merrill, 456 U.S. at 395. In finding that an implied right of action existed, the Merrill Court determined that Congress intended "to protect all futures traders from price manipulation and other fraudulent conduct . . . ." Id. at 390.

Nothing in the Merrill opinion supports Defendants' argument. Moreover, Merrill was later overturned by statute when Congress amended the Act to include a private right of action. See 7 U.S.C. § 25. Regardless, the Merrill Court's discussion of the legislative intent of the antifraud provision is still an accurate analysis of the broad protections Congress meant to create when drafting the antifraud provision of the Act.

The crux of Defendants' argument is that neither Shasta's members, nor the Defendants, ever acted as buyers or sellers of commodities futures contracts (Defs.' Br. in Supp. of Summ. J. at

4

37.). The Defendants rely on the lack of a direct connection between themselves and the investors. However, the Equity Defendants solicited investors for Shasta, and the funds from those investors went into Defendant Shimer's attorney escrow account. Defendant Shimer then wired that money to Tech Traders, where it was pooled with other investors' funds and invested in commodity futures contracts. It is unclear how the Shasta members could not be within the class of persons protected by the antifraud provision of the Act, given that they invested in commodity futures contracts. Moreover, it is equally unclear how Defendants can say they did not have the requisite connection to the buying and selling of futures contracts to be within the purview of the antifraud provision of the Act.

Finally, it is noteworthy that in the 2000 amendments to the Act that created an express private right of action, Congress included the following language:

> Any person . . . who violates this chapter or who willfully aids, abets, counsels, induces, or procures the commission of a violation of this chapter shall be liable for actual damages . . . caused by such violation to any other person . . . who made through such person any contract of sale of any commodity for future delivery (or option on such contract or any commodity); or who deposited with or paid to such person money, securities, or property (or incurred debt in lieu thereof) in connection with any order to make such contract
> . . . .

7 U.S.C. § 25(1)(B). Although this provision applies to private rights of action, and the instant matter is not a private right

of action, this language nevertheless demonstrates Congress's intent that a direct connection to the buying and selling of futures contracts is not required.  Rather, Congress intended to afford broad protection to futures investors, whether the defendants directly or indirectly acted as futures sellers. Here, the Equity Defendants acted as a conduit for the Shasta investors' funds. The Court is at a loss to understand how Defendants can argue that they had no "connection" to the selling of futures contracts, and that Shasta's investors were not purchasers of futures contracts.

Defendants failed to establish that no genuine issue of material fact exists with regard to the antifraud count in Plaintiff's Complaint because a reasonable jury could disagree with Defendants' analysis in this case, and find for CFTC. Therefore, the Court denies Defendants' Motion for Summary Judgment on Count One.

## IV.  Remaining Arguments

For the remaining arguments in Defendants' Brief in Support of Summary Judgment, as well as the other arguments asserted in Defendants' Brief in Support of their Motion for Reconsideration, the Court incorporates by reference its Opinion dated November 16, 2006 which denied Defendants' motion for summary judgment.

The Court notes Defendants' concern that the Opinion is "suspiciously similar" (Defs.' Br. in Supp. of Mot. for Recons.

at 2) to its October 4, 2005 Opinion.  However, "suspiciously similar" arguments yield "suspiciously similar" analysis.

Moreover, the Court notes that it will not engage in a fact-finding mission in the matter of <u>Commodities Futures Trading Commission v. Heritage Capital Advisory Services, Ltd.</u>, Comm. Fut. L. Rep. (CCH) ¶ 21,627, p. 26,384 (N.D. Ill.1982).  Defendants go to great lengths to demonstrate that the cases are factually dissimilar by submitting documents related to the <u>Heritage</u> litigation.  (Defs.' Br. in Supp. of Mot. for Summ. J. Exs. A, B, C, D, E.)  The language of the <u>Heritage</u> opinion stands alone.  This Court provided a thorough analysis of why Shasta is a commodity pool in its prior Opinions, and that analysis stands.

**V.   Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for summary judgment.


Dated: <u>12/18/2006</u>          <u>s/Robert B. Kugler</u>
                         ROBERT B. KUGLER
                         United States District Judge

7