<u>NOT FOR PUBLICATION</u>                                  (Docket No. 430)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____  :
                                     :
COMMODITY FUTURES TRADING            :
COMMISSION,                          :
                                     :
            Plaintiff,               :   Civil No. 04-1512 (RBK)
                                     :
      v.                             :   **OPINION**
                                     :
EQUITY FINANCIAL                     :
GROUP, LLC, et al.,                  :
                                     :
            Defendants.              :
_____  :

**KUGLER**, United States District Judge:

Before the Court is a motion by Plaintiff Commodity Futures Trading Commission for reconsideration of the Court's December 18, 2006 Order that denied summary judgment on its claim that Defendant Robert Shimer aided and abetted Tech Traders, Inc.'s violation of 17 C.F.R. § 4.30. For the reasons provided below, Plaintiff's motion will be granted.

**I.   Background**

The motion presently before the Court relates to the role of Robert W. Shimer ("Shimer"), Vincent J. Firth ("Firth") and Equity Financial Group, LLC ("Equity"), (collectively "Equity Defendants"), in a multi-million dollar commodity fraud operated by Defendants Tech Traders and its president Coyt Murray

("Murray"). Between June 2001 and April 2004, Tech Traders allegedly solicited over $47 million in investments by claiming to employ a portfolio trading system that guaranteed significant annual returns. While Tech Traders and its supposedly independent certified public accountant ("CPA"), Defendant J. Vernon Abernethy ("Abernethy"), reported substantial monthly and quarterly gains, Tech Traders was actually hemorrhaging money at a remarkable rate, resulting in losses in excess of $20 million. Tech Traders lost at least $7 million in trading commodity futures contracts, and unlawfully appropriated investors' funds to pay salaries, expenses, and make disbursements under the guise of profit.

    The Equity Defendants' liability arises from their control and operation of a related investment group, Shasta Capital Associates, LLC ("Shasta"), which was essentially a feeder fund for Tech Traders. The Commodity Futures Trading Commission ("CFTC" or "Plaintiff") alleges that the Equity Defendants solicited approximately $15 million from 74 investors between June 2001 and March 2004, for the purpose of investing in Tech Traders. Shasta's Private Placement Memorandum ("PPM") informed investors that 99% of this money would be invested for the benefit of Shasta and 1% would be used for management costs. Upon receipt, investor funds were deposited into Shimer's attorney escrow account and then transmitted to Tech Traders. Tech Traders

2

pooled the Shasta funds with its other investment funds and used them, in part, to trade exchange-traded commodity futures contracts and foreign currency contracts.

Over the course of their relationship with Tech Traders, the Equity Defendants reported tremendous trading profits, even though Shasta actually lost substantial sums through Tech Traders and apparently failed to generate any profit whatsoever. The Equity Defendants further misled investors by representing that these profit numbers were verified by an independent CPA, Defendant Abernethy, whose results were then affirmed by a second CPA, Elaine Teague ("Teague"), a close friend of Shimer's with little experience in this particular field. The CFTC alleges that the Equity Defendants knew or should have known that neither CPA's review was independent and that the results were therefore unverified.

Plaintiff filed a motion for summary judgment on April 7, 2006. In an Opinion and Order filed December 18, 2006, this Court denied summary judgment with regard to CFTC's claim that Shimer aided and abetted Tech Traders's violation of 17 C.F.R. § 4.30 because Plaintiff failed to provide citations to the record to support its claim.  Plaintiff moved for reconsideration of this decision on December 28, 2006. Defendant Shimer opposes this motion.

**II.  Discussion**

    **A.  Standard**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. <u>Celotex</u>, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. <u>Id.</u> at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

4

Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Serbin, 96 F.3d at 69 n.2 (quoting Celotex, 477 U.S. at 322); Heffron v. Adamar of New Jersey, Inc., 270 F. Supp. 2d 562, 568-69 (D.N.J. 2003).

    **B.    Commodity Trading Advisor**

Plaintiff CFTC alleges that Tech Traders was a Commodity Trading Advisor ("CTA") for Shasta because it advised the Shasta commodity pool on trading in commodity futures contracts. Therefore, Plaintiff alleges that by accepting Shasta's funds and trading them in its accounts at Futures Commission Merchants under the Tech Traders name, Tech Traders violated 17 C.F.R. § 4.30.

The threshold issue is whether Tech Traders is a CTA. The Act defines a CTA as

> [A]ny person who[:]
>
>> (i) for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in-
>>
>>> (I) any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market or derivatives transaction execution facility;
>>>
>>> (II) any commodity option authorized under section 6c of this title; or

>> (III) any leverage transaction authorized under section 23 of this title; or
>
> (ii) for compensation or profit, and as part of a regular business, issues or promulgates analyses or reports concerning any of the activities referred to in clause (i).

7 U.S.C. § 1a(6)(A).

Courts interpret the definition of a CTA liberally. See, e.g., CFTC v. Savage, 611 F.2d 270, 279-80 (9th Cir. 1979). For example, the Seventh Circuit held that an entity that produced publications that "include[d] securities and commodity market charts, market commentary, and educational publications concerning markets and trading" was a CTA within the meaning of the CEA. Commodity Trend Service, Inc. v. CFTC, 149 F.3d 679, 689 (7th Cir. 1998). Likewise, the Second Circuit found that an organization met the statutory definition of a CTA because the organization "advised others through the electronic media, for profit, as to 'the value or the advisability of trading in' futures contracts . . . ." CFTC v. Vartuli, 228 F.3d 94, 103 (2d Cir. 2000). The Vartuli court elaborated that "[t]hroughout the day, in response to market conditions, [the entity at issue] provided specific buy, sell, stop and profit objective recommendations to customers." Id.

In this case, CFTC alleges that Tech Traders was the CTA for Shasta, in that Tech Traders made the trading decisions for Shasta and received compensation in return for that advice. To

6

support its argument, CFTC provides the Investment Agreement between Tech Traders and Shasta, in which Tech Traders states that Tech Traders "developed a certain 'portfolio' system for successfully trading the futures contracts of certain selected financial markets including the NASDAQ and S&P 500," and that Tech Traders "expressed its willingness to accept funds from Shasta and place those funds on Shasta's behalf with Tech's U.S. brokerage firm." (Pl.'s Br. Supp. Summ. J. Ex. 91 at 1.) The Agreement later states that "funds received by Tech [Traders] from Shasta shall be placed immediately with Tech [Traders]'s U.S. brokerage firm(s) for the purpose of increasing Tech [Trader]'s credit lines for trading." (Id.) Most importantly, the Agreement further elaborates that Tech Traders "shall manage and trade the funds of Shasta using trading signals generated by Tech's Synergy Stock Index Portfolio Trading System . . . that takes a unique synergistic approach to the computerized trading of futures contracts on selected financial markets . . . ." (Id. at 5.)

    Section VII of the Agreement shows that Tech Traders will receive compensation for the arrangement with Shasta. Specifically, Shasta and Tech Traders agreed that after payment of Tech Traders's actual trading-related expenses, "any profits which remain shall be divided equally between the parties . . . ." (Id. at 4.) Because Plaintiff demonstrated that Tech

Traders agreed to advise Shasta on trading, and to trade on Shasta's behalf, for profit, Plaintiff successfully met the initial burden on summary judgment. In addition, Defendant Shimer, as the non-moving party, failed to adequately meet his burden to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To the contrary, with regard to whether Tech Traders was a CTA, Shimer does little more than "simply show that there is some metaphysical doubt as to material facts." Therefore, the Court finds that Tech Traders was a CTA within the meaning of the CEA, and will now address whether Tech Traders violated 17 C.F.R. § 4.30.

### C. Tech Traders's Violation of 17 C.F.R. § 4.30

Regulation 4.30 states

> No commodity trading advisor may solicit, accept or receive from an existing or prospective client funds, securities or other property in the trading advisor's name (or extend credit in lieu thereof) to purchase, margin, guarantee or secure any commodity interest of the client; provided, however, that this section shall not apply to a future commission merchant that is registered as such under the Act or to a leverage transaction merchant that is registered as a commodity trading advisor under the Act.

In their depositions, both Defendants Shimer and Firth admit that Tech Traders accepted money from third parties and traded those funds in Tech Traders's name. (See, e.g., Shimer Dep. at 697; Firth Dep. at 348.) This evidence is undisputed. Therefore, the Court finds that Tech Traders violated 17 C.F.R. § 4.30. The Court will now address whether Defendant Shimer aided and abetted

that violation.

### D. Aiding and Abetting

CFTC alleges that Defendant Shimer aided and abetted Tech Traders's violation of 17 C.F.R. §4.30 because Murray and Shimer deliberately planned to trade Shasta's money in the manner described in Section II.C., supra. The Act provides that

> Any person who commits, or who willfully aids, abets, counsels, commands, induces, or procures the commission of, a violation of any of the provisions of this chapter, or any of the rules, regulations, or orders issued pursuant to this chapter, or who acts in combination or concert with any other person in any such violation, or who willfully causes an act to be done or omitted which if directly performed or omitted by him or another would be a violation of the provisions of this chapter or any of such rules, regulations, or orders may be held responsible for such violation as a principal.

7 U.S.C. § 13c(a).

The evidence demonstrates that Defendant Shimer drafted the Investment Agreement between Shasta and Tech Traders. (Shimer Dep. at 1023.) The Investment Agreement states, "All responsibility for margin calls shall be the sole responsibility of Tech [Traders] and all accounts established with Tech [Trader]'s U.S. brokerage firm(s) even though such accounts may be initially established with funds from Shasta shall list Tech [Traders] as the sole owner of the brokerage account." (Pl.'s Br. Supp. Summ. J. Ex. 91 at 10.) Moreover, Shimer drafted Shasta's Private Placement Memorandum, (Shimer Dep. at 646), which states,

9

"All funds traded pursuant to the Investment Agreement are traded solely in the name of the Trading Company [(i.e., Tech Traders)]." (Pl.'s Br. Supp. Summ. J. Ex. 49 at 11).

Because of the undisputed and clear evidence that Defendant Shimer knew that Tech Traders violated 17 C.F.R. § 4.30, because Defendant Shimer intentionally assisted in Tech Traders's violation of 17 C.F.R. § 4.30 by drafting documents that governed these violations, the Court finds that Defendant Shimer aided and abetted Tech Traders's violation. Therefore, Plaintiff's motion for summary judgment with regard to this count of Plaintiff's complaint is granted.

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment on the charge that Defendant Robert Shimer aided and abetted Tech Traders violation of 17 C.F.R. § 4.30.

Dated: 3/30/2007         s/Robert B. Kugler
                         ROBERT B. KUGLER
                         United States District Judge